## SWITCHING CHARGES WITHIN MUNICIPAL LIMITS.

Court of Appeals for Hamilton County.

THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY CO.
v. THE J. B. DOPPES' SONS LUMBER COMPANY.*

THE RICHTER GRAIN COMPANY v. THE CINCINNATI, HAMILTON
& DAYTON RAILWAY COMPANY, AND THE CLEVELAND
CINCINNATI, CHICAGO & ST. LOUIS RAILWAY
COMPANIES.**

Decided, July 16, 1914.

*Railways—Switching Charges Within Municipal Terminal Limits—Application of Section 9000, General Code.*

The word "switching" as used in Section 9000, General Code, applies only to the movements within the terminal limits of a municipality of freight cars when incidental to the shipment as a whole or to the main journey, and has no application to shipments from one railway to another within the terminal limits of a municipality.

*Dolle, Taylor & O'Donnell,* for the Doppes' Sons Co.
*Charles A. Groom,* for the Richter Grain Co.
*Waite & Schindel,* for the C., H. & D. Railway Co.  '
*Harmon, Colston, Goldsmith & Hoadly,* for C., N. O. & T. P. Railway Co.
*Maxwell & Ramsey,* for C., L. & N. Railroad Co., interested in other cases involving same question.

JONES, E. H., J.; JONES, O. B., J., concurs; SWING, J., not sitting.

These three cases involve one question, and were presented at one time.

The plaintiffs below, viz., the J. B. Doppes' Sons Lumber Company and the Richter Grain Company, in their petitions seek to

*Reversing *Doppes' Sons Lumber Co.* v. *C., C., C. & St. L. Railway Co.,* 14 N.P.(N.S.), 392.

**Affirming *Richter Grain Co.* v. *C., H. & D. Railway Co.,* 16 N.P.(N. S.), 81.

recover on each of their several causes of action the penalty of $150 prescribed by Section 9002 of the General Code, for a violation of the provisions of Section 9000, General Code.

The latter section reads as follows:

"Sec. 9000. A company owning a track or tracks lying contiguous to coal mines, stone quarries, manufacturing establishments, elevators, warehouses, navigable waters or sidetracks, and within the proper terminal limits of or about a city or village, shall be entitled to receive from the company whose cars are so switched, loaded and unloaded at such mines, quarries, manufacturing establishments, elevators, warehouses, navigable waters or sidetracks, no more than one dollar per car for switching one-half mile or less on such tracks; for distances over one-half mile and not exceeding two and one-half miles, not to exceed one dollar and fifty cents per car; for all distances over two and one-half miles and not exceeding five miles, not more than two dollars per car; and for all distances of more than five miles, not more than three dollars per car. When such service is on the roads of two or more companies, then such charges shall be divided between the companies in proportion to the distances of each road. But each company shall be entitled to at least one dollar for such service, regardless of distance, but there shall be no charge for returning empty cars from such mines, quarries, manufacturing establishments, elevators, warehouses, navigable waters or sidetracks. Such company may perform the service or do the switching work herein provided for, in the daytime. Whatever private sidetracks are or may be constructed, the company must switch cars thereon at the rates herein specified."

Plaintiffs allege in their petitions that they were required to pay an excessive rate for shipments in carload lots of lumber and grain between points within the terminal limits of the city of Cincinnati. For instance, in the first case the petition alleges:

"That the plaintiff shipped a car of lumber from Fernbank on the tracks of the Big Four to its private switch on the tracks of the Cincinnati, New Orleans & Texas Pacific Railway Company; that all the places concerned, including Fernbank, are in the switching limits of Cincinnati; and that the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and the Cincinnati, New Orleans & Texas Pacific Railway Company demanded and received from plaintiff for switching from the tracks of the

said Cleveland, Cincinnati, Chicago & St. Louis Railway Company onto and over the tracks of the other defendant company to the plaintiff's siding, the sum of six dollars, in addition to charging five dollars for transporting said car from Fernbank over the Cleveland, Cincinnati, Chicago & St. Louis Railway Company to Cincinnati.''

The several complaints against the railroad companies are the same in nature, although the charges and points between which shipments were made differ.

It is claimed in making the charges for these intracity shipments no heed was given by the carriers to the provisions of Section 9000, General Code, that the transporting of the car over one of the roads is a ''switching'' within the meaning of that section; and that the charge therefor must be governed accordingly.

The sole question in this case, therefore, is whether or not the rates prescribed in Section 9000 must be observed by the railroad companies in collecting for shipments such as those described in the petitions herein.

After reading the briefs of counsel and examining the authorities cited therein, we have reached the conclusion that Section 9000 has no application to shipments such as those under consideration within the terminal limits of a city. We are of the opinion that the word ''switching'' as used in said section applies only to movements of freight cars within such city that are incidental only to the shipment as a whole; or, as one of counsel puts it ''to the main journey.'' While the railroads are required by Sections 8998 and 8999, under the penalty prescribed in Section 9002, to make transfers of freight cars to avoid the necessity of reloading same, they are entitled to be paid for shipments from one local station within the city to another local station therein at the regular tariff rates in effect between said stations. Such an interpretation of the statute is not only warranted by its language and that of preceding sections, but to our minds is required by a sense of justice and fairness to all parties concerned. It is also well supported by decisions of higher courts, which we follow in deciding this case. See *Grand*

*Trunk R. R. Co.* v. *Mich. R. R. Com.*, 231 U. S., 457 (198 Fed., 1009); *Dixon* v. *R. R. Co.*, 110 Ga., 173.

The distinction between a switching and a transportation movement is well expressed in 8th Words & Phrases, Section 7070.

The judgment in case No. 95 will be reversed, and the judgments in cases Nos. 318 and 319 affirmed.