United States Court of Appeals,

Eleventh Circuit.

No. 95-3214

Non-Argument Calendar.

N.B., by her mother and next friend, D.G. a/k/a N.B., Plaintiff-Appellant,

v.

ALACHUA COUNTY SCHOOL BOARD, Robert W. Hughes, Superintendent, Alachua County School Board, individually and in his official capacity, Suwannee County School Board, Charles F. Blalock, Jr., Superintendent, Suwannee County School Board, individually and in his official capacity, Columbia County School Board, Diane Lane, Superintendent, Columbia County School Board, individually and in her official capacity, Defendants-Appellees.

June 7, 1996.

Appeal from the United States District Court for the Northern District of Florida. (No. 94-10164-MMP), Maurice Mitchell Paul, Chief Judge.

Before TJOFLAT, Chief Judge, and DUBINA and BLACK, Circuit Judges.

PER CURIAM:

We affirm the judgment of the district court for the reasons stated in the district court's dispositive order of July 20, 1995, which appears in the Appendix.

AFFIRMED.

APPENDIX

*ORDER*

This cause comes before the Court upon motion to dismiss plaintiff's first amended complaint by defendants Alachua County School Board and Columbia County School Board (doc. 6). For the reasons stated below, the motion is GRANTED.

BACKGROUND

Plaintiff N.B. is a hearing impaired child. During the

relevant time periods, N.B. lived in either Columbia or Suwannee County, Florida. Sometime prior to March 1986, N.B. was bused from her home in Columbia or Suwannee County to attend a special school for hearing impaired children in Alachua County. Plaintiff claims that this decision caused her to be segregated from hearing students. She also claims that the long bus ride caused her to miss a significant portion of class work each school day. N.B. left the State of Florida at the end of the 1992/93 school year and is no longer in the Florida educational system.

N.B. has brought this suit alleging violations of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* She seeks compensatory damages under the IDEA (Count I) and 42 U.S.C. § 1983 (Count II).

In the motion to dismiss, defendants move for dismissal of the first amended complaint based on the following four grounds: 1) the plaintiff has failed to exhaust administrative remedies; 2) the plaintiff's claims are barred by the statute of limitations; 3) compensatory damages are not available under the IDEA; and 4) compensatory damages are not available under 42 U.S.C. § 1983 for violations of the IDEA. Because the Court finds dismissal is appropriate for plaintiff's failure to exhaust necessary administrative remedies as a prerequisite to filing this action, the Court need not reach the remaining three issues concerning the statute of limitations and the availability of compensatory damages under the IDEA and 42 U.S.C. § 1983.

DISCUSSION

The IDEA, formerly known as the Education for All Handicapped

Act ("EHA"), 20 U.S.C. § 1400 *et seq.,* provides federal money to state and local education agencies in order to assist them in educating handicapped children, on the condition that the states and local agencies implement the substantive and procedural requirements of the Act. The principal purpose of the Act is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet the handicapped child's unique needs, ... [and to ensure] that the rights of handicapped children and their parents or guardians are protected." 20 U.S.C. § 1400(c).

To carry out these objectives, the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. *Honig v. Doe,* 484 U.S. 305, 311-12, 108 S.Ct. 592, 597-98, 98 L.Ed.2d 686 (1988). Under this scheme of procedural protections, parents are entitled to 1) examination of all relevant records pertaining to evaluation and educational placement of their child, 2) prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement, 3) an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education, and 4) an opportunity for an "impartial due process hearing" with respect to any such complaints. *Id.* at 312, 108 S.Ct. at 598.

In the event that a party is dissatisfied with or aggrieved by

the findings and decisions made after the impartial due process hearing, that party may obtain additional administrative review by the state educational agency.  20 U.S.C. § 1415(c).  If that party is still dissatisfied or remains aggrieved after the administrative appeal, a judicial review is available in either state court or federal court to contest the decisions of the educational agency. *Id.* § 1415(e)(2).

"The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities."  *Ass'n for Retarded Citizens of Alabama v. Teague,* 830 F.2d 158, 160 (11th Cir.1987) (citing *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Key reasons for requiring the exhaustion of administrative remedies are as follows:  1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics;  2) to allow the full development of technical issues and a factual record prior to court review;  3) to prevent deliberate disregard and circumvention of agency procedures established by Congress;  and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.  *Id.*

The exhaustion requirement, however, is not jurisdictional and therefore " "is not to be applied inflexibly.' "  *Id.* (quoting *McGee v. United States,* 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971)).  The exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate.  *Id.* (citing to *Smith v. Robinson,* 468

U.S. at 1014 n. 17, 1019 n. 22, 104 S.Ct. at 3469 n. 17, 3472 n. 22).

In the amended complaint, plaintiff does not allege that she has exhausted her administrative remedies. Instead, plaintiff argues that exhaustion of administrative remedies is not required in this case because she no longer attends any of the defendant school districts. This argument was squarely rejected in *Torrie By and Through Torrie v. Cwayna,* 841 F.Supp. 1434 (W.D.Mich.1994). In that case, an emotionally impaired student and his mother brought an action against a school district and its employees for alleged violations of IDEA, Rehabilitation Act, false arrest and false imprisonment. The student and his mother neither requested an impartial due process hearing nor filed a complaint with the school district before filing the action. In responding to the school district's motion to dismiss based on failure to exhaust administrative remedies, the plaintiffs argued that exhaustion was not required under the futility exception because they no longer lived in the defendant school district. Reasoning that parents' unilateral act of removing their child from a public school could not excuse their failure to exhaust administrative remedies, the court dismissed the action for failure to exhaust remedies. *Torrie,* 841 F.Supp. at 1442. The rationale of *Torrie* is persuasive. If parents can bypass the exhaustion requirement of the IDEA by merely moving their child out of the defendant school district, the whole administrative scheme established by the IDEA would be rendered nugatory. Permitting parents to avoid the requirements of the IDEA through such a "back door" would not be

consistent with the legislative intent of the IDEA.

The plaintiff's second argument is equally unpersuasive. The plaintiff argues there is no point pursuing administrative remedies because the defendant school districts lack authority to grant the relief requested, namely money damages. Again, if the plaintiff's argument is to be accepted, then future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant. This goes against the very reason that we have the exhaustion requirement, which is "[to prevent] deliberate disregard and circumvention of agency procedures established by Congress." *Teague,* 830 F.2d at 160. In fact, courts that considered this argument have all rejected it. *See Buffolino v. Board of Education of Sachem Central School District,* 729 F.Supp. 240, 247 (E.D.N.Y.1990); *Waterman v. Marquette-Alger Intermediate School District,* 739 F.Supp. 361, 368 (W.D.Mich.1990) ("A procedure that may result in any substantial relief is not futile"); *Torrie,* 841 F.Supp. at 1442.

Nor does the fact that the plaintiff also seeks money damages under 42 U.S.C. § 1983 for violations of the IDEA make any difference. "[W]hen parents choose to file suit under another law that protects the rights of handicapped children—and the suit could have been filed under the [IDEA]—they are first required to exhaust the [IDEA]'s remedies to the same extent as if the suit had been filed originally under the [IDEA]'s provisions." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). As the plaintiff has failed to exhaust administrative remedies, the plaintiff may not proceed with her § 1983 claims for violations of the IDEA.

CONCLUSION

Accordingly, the defendants' motion to dismiss (doc. 6) is GRANTED. The Clerk is directed to dismiss the first amended complaint with prejudice.