**C.T., by and through his parents and guardians Richard G. TREVORROW and Cheryl L. Trevorrow, et al., Plaintiffs–Appellants,**

v.

**NECEDAH AREA SCHOOL DISTRICT, et al., Defendants–Appellees.**

No. 01–3008.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2002.

Decided June 25, 2002.

Before MANION, ROVNER, WILLIAMS, Circuit Judges.

## ORDER

C.T.'s parents brought this lawsuit on behalf of C.T. against the Necedah Area School District and various school officials, alleging that the defendants denied C.T. his right to a free appropriate education under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* The complaint sought money damages and, along with the IDEA claim, alleged violations under 42 U.S.C. § 1983, the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, the Americans with Disabili-

ties Act, 42 U.S.C. § 12101 *et seq.*, and the Fourteenth Amendment, as well a state tort claim. The district court dismissed the claims for failure to exhaust administrative remedies under the IDEA. We affirm.

C.T. was born in September 1987 and attended the Necedah Area School District from kindergarten until his parents removed him in the fall of 2000. C.T. is a disabled child under the IDEA based on his behavioral and social problems, and he had an individual educational plan (IEP). In the complaint, C.T.'s parents describe a number of incidents between 1995 and 2000 that allegedly deprived C.T. of an appropriate education and also caused him emotional injury. Specifically, they alleged that school officials failed to identify that C.T. suffered from a learning disability and failed to follow his IEP. In addition, they alleged that the manner in which the school handled behavioral incidents with C.T. singled him out to other students and parents, which resulted in C.T.'s being shunned and viewed as an outcast. They also alleged that the school inappropriately and erroneously labeled C.T. as a sexual harasser and "sexual perpetrator."

C.T.'s parents initially requested an IDEA due process hearing. They later abandoned this proceeding, however, after removing him from the school, and a hearing was never held. In January 2001 C.T.'s parents filed a complaint in district court against the school district, Cooperative Educational Service Agency 5 (an agency the school district contracted to help provide special education), and the following school officials: Charlotte Preiss, Peter Klaus, Tami Stowers, Deb Jensen, Ron Schelfhout, and Jack Heesch. On July 18, 2001, the district court granted the defendants' motion to dismiss the claims for failure to exhaust administrative remedies as required by the IDEA.

On appeal C.T. and his parents contend that they were not required to exhaust IDEA administrative remedies because exhaustion would have been futile.

Judicial review is generally unavailable under the IDEA unless all administrative procedures have been exhausted. *Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The IDEA offers comprehensive solutions for matters relating to education and allows aggrieved parents to seek an impartial due process hearing before a state educational agency. 20 U.S.C. § 1415(f)-(g). Parties aggrieved by the findings or decision of the state agency may then bring a lawsuit in federal district court. 20 U.S.C. § 1415(i)(2). When relief is available under the IDEA, the exhaustion requirement applies even when the parties file other federal claims in addition to (or instead of) the IDEA claim:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, or remedies available under the Constitution, the American with Disabilities Act ... the Rehabilitation Act ... or other Federal laws ... except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted ...

20 U.S.C. § 1415(*l*). Parties may bypass the administrative process only if they can demonstrate that the process would be futile or inadequate. *Honig,* 484 U.S. at 326–27.

The statute's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record, often involving technical issues; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies. *See Charlie F. v. Bd. of Educ.,* 98 F.3d 989, 992–93 (7th Cir.1996); *N.B. v. Alachua County Sch. Bd.,* 84 F.3d 1376, 1378–79 (11th Cir.1996).

In *Charlie F.,* 98 F.3d at 991–93, we held that when relief is available in principle under the IDEA, parties must exhaust administrative remedies even if they invoke different statutes or seek money damages, which are unavailable under the IDEA. Charlie F. was a disabled fourth-grade student with an IEP; his parents alleged that his teacher singled him out by frequently inviting students to express their complaints about him, thereby leading to humiliation, taunts, ridicule, fistfights, loss of confidence and self-esteem, and disruption of his educational progress. *Id.* at 990. His parents, not even raising an IDEA claim, sought compensatory damages under § 1983, the ADA, and the Rehabilitation Act, but the district court granted the defendants' motion to dismiss because his parents had not exhausted IDEA remedies. *Id.* at 991. On appeal Charlie F. and his parents argued that exhaustion should not be required because they were seeking money damages and were not interested in the IDEA remedies. *Id.* at 991. We rejected both arguments. *See id.* at 992–93.

First, we ruled that parties cannot avoid exhaustion merely by seeking money damages, concluding that "relief available" under the IDEA means relief for events, consequences, and conditions giving rise to the complaint, not the type of relief the plaintiff prefers. *Id.* at 992. In other words, a plaintiff cannot bypass the administrative proceedings by seeking money damages rather than an administrative remedy. Because IDEA procedures cover any matter "with respect to the identification, evaluation, and educational placement of the child, and the provision of a free

appropriate public education," 20 U.S.C. § 1415(b)(1), the complained-of events were "educational," in the sense that they fell under the statute's coverage, *id.* at 993. Therefore, his parents were required to exhaust administrative remedies. *Id.* Moreover, the fact that the educational problem had consequences outside school (e.g., shunning, ridicule, fights) was also insufficient to avoid the statutory system. *Id.* at 992.

Second, we also ruled that parties may not opt out of the administrative procedures merely by asserting that they are not interested in the statute's remedies. *Id.* at 993. Parties cannot know if adequate relief is unavailable unless they ask for it and go through the process. *Id.* Because administrative relief was available in principle, the court dismissed the claims for failure to exhaust administrative remedies. *See id.*

C.T.'s parents raise similar arguments in this case. First, they argue that exhaustion would have futile because at the time they filed suit, they had already removed C.T. from the school district and have no intentions re-enrolling him. In other words, they argue that they are not interested in IDEA remedies. This fact, however, is insufficient to excuse the exhaustion requirement. *See id.; see also N.B.,* 84 F.3d at 1379 (unilateral act of removing child from school does not excuse failure to exhaust administrative remedies); *Doe v. Smith,* 879 F.2d 1340, 1343 (6th Cir.1989) (same).

Next, they argue that exhaustion would have been futile because they are seeking money damages for retrospective injuries, a remedy unavailable under the IDEA. The mere fact that they are seeking money damages is insufficient to excuse the exhaustion requirement. *Charlie F.,* 98 F.3d at 992; *see also Polera v. Bd. of Educ.,* 288 F.3d 478, 488–89 (2d Cir.2002); *Frazier v.*

*Fairhaven Sch. Comm.,* 276 F.3d 52, 63 (1st Cir.2002); *N.B.,* 84 F.3d at 1379. Also insufficient is characterizing the claim as one for "retrospective injuries" because the timing for seeking relief is largely up to parents—they cannot sit on claims and later sue for damages. *See Polera,* 288 F.3d at 488–89; *Frazier,* 276 F.3d at 63. Parents would be able to bypass the exhaustion requirement if they could simply ignore available administrative remedies and later sue for damages. *See Polera,* 288 F.3d at 488–89; *Frazier,* 276 F.3d at 63. C.T.'s parents could have sought some type of IDEA relief at various points between 1995 and 2000, the time period they allege C.T. suffered injury.

Finally, C.T. and his parents argue that exhaustion would be futile because they could not wait for administrative remedies—C.T. was showing signs of anxiety and needed to be removed from the school immediately. The complained-of incidents, however, go back to 1995; the parents could have sought administrative remedies at any time. *See Polera,* 288 F.3d at 488–89; *Frazier,* 276 F.3d at 63. More importantly, though, removing C.T. from the school did not preclude an appropriate administrative remedy. *See Sch. Comm. v. Dept. of Educ.,* 471 U.S. 359, 372–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (unilateral act of removing child from school and placing in private school does not cut off administrative relief); *Doe,* 879 F.2d at 1343 (same). Even if C.T.'s parents felt it was an emergency situation and they needed to remove him, they still could have sought administrative relief.

Accordingly, the district court's judgment is AFFIRMED.