# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1756

_____

J.M., Next Friend Kristine McCauley

*Plaintiff - Appellant*

v.

Francis Howell School District

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 10, 2017
Filed: March 7, 2017

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

On behalf of her minor son, J.M., Kristine McCauley sued Francis Howell School District, claiming unlawful use of isolation and physical restraints. Her second amended complaint asserted violations of: (1) the Equal Protection Clause of the Fourteenth Amendment; (2) 42 U.S.C. §§ 1983 and 1988; (2) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182; (3) Section 504 of the Rehabilitation Act

of 1973; and (4) the Missouri Human Rights Act (MHRA), RSMo § 213.010 et seq. The district court[1] dismissed the federal claims for "lack of subject matter jurisdiction for failure to exhaust administrative remedies" and declined to exercise supplemental jurisdiction over the MHRA claim, dismissing it without prejudice.[2] Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In 2011, J.M. began kindergarten in the Francis Howell School District. J.M. qualified for services under the Individuals with Disabilities Education Act (IDEA) based on his diagnoses of attention deficit hyperactivity disorder, autism spectrum disorder, anxiety disorder, separation anxiety disorder, panic disorder, Asperger's/autism spectrum disorder, and generalized anxiety. *See* **20 U.S.C. § 1400 et seq**. Under the IDEA, J.M. had an Individualized Education Program (IEP).

---

[1]The Honorable Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]The parties and the district court treat the IDEA's exhaustion requirement as jurisdictional rather than a claims-processing rule. *Compare* **Payne v. Peninsula School Dist.**, 653 F.3d 863, 870 (9th Cir. 2011) (en banc) ("In sum, we hold that the exhaustion requirement in § 1415(l) is not jurisdictional."), *with* **Polera v. Bd. of Educ. of the Newburgh Enlarged City School Dist.**, 288 F.3d 478, 483 (2nd Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."). Here, neither party requested a ruling on this issue. "Because the District has not waived the exhaustion argument and . . . [McCauley was] required to exhaust . . . administrative remedies, [this court] need not reach this issue." *See* **J.B. ex rel. Bailey v. Avilla R-XIII School Dist.**, 721 F.3d 588, 593 n.2 (8th Cir. 2013), *citing Muskrat v. Deer Creek Pub. School*, 715 F.3d 775, 784-85 (10th Cir. 2013) (declining to consider whether the IDEA's exhaustion requirement was jurisdictional because the parties did not raise the issue and the defendants argued exhaustion in the district court).

McCauley alleges that between January 2012 and September 2014, J.M. repeatedly was placed in physical restraints and isolation without her knowledge. Learning of this, she immediately contacted the District, requesting restraints only when necessary and no isolation. On September 5, McCauley removed J.M. from the District.

McCauley sued in federal court under the IDEA, 42 U.S.C. §§ 1983 and 1988, and Missouri common law (torts of negligence per se, false imprisonment, and battery). She amended the complaint to add claims under the ADA and MHRA. The District answered, claiming failure to exhaust administrative remedies for the federal claims, and sovereign immunity for the common law tort claims. McCauley voluntarily amended her complaint, removing the IDEA and common law tort claims. Her second amended complaint thus included claims under the Equal Protection Clause, 42 U.S.C. §§ 1983 and 1988, the ADA, Section 504 of the Rehabilitation Act of 1973, and the MHRA.

The District moved to dismiss, alleging lack of subject matter jurisdiction for failure to exhaust administrative remedies under the IDEA. McCauley argued her claims were not under the IDEA, and thus not subject to exhaustion. In the alternative, she asserted exceptions to the exhaustion requirement. The district court granted the motion to dismiss.

I.

This court reviews de novo whether exhaustion of administrative remedies was required. *J.B. ex rel. Bailey v. Avilla R-XIII School Dist.*, 721 F.3d 588, 592 (8th Cir. 2013), *citing* **Brown v. J.B. Hunt Transp. Servs., Inc.**, 586 F.3d 1079, 1083 n.4 (8th Cir. 2009).

"In the IDEA, Congress established procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a free appropriate public education (FAPE)." *Id.*, *citing* **20 U.S.C. § 1415(a)**. One safeguard is an opportunity to present complaints about the provision of a FAPE in "an impartial due process hearing." *Id.*, *quoting* ***Honig v. Doe***, 484 U.S. 305, 311-12 (1988). *See* **20 U.S.C. § 1415(f)**. "A party aggrieved by the outcome of an IDEA due process hearing may challenge the outcome before the state educational review agency." ***J.B.***, 721 F.3d at 592, *citing* **20 U.S.C. § 1415(g)(1)**. "The outcome of the administrative review hearing may then be disputed in district court." *Id.*, *citing* **20 U.S.C. § 1415(i)(2)(A)**.

The IDEA's exhaustion requirement also applies to claims under the Constitution, the ADA, the Rehabilitation Act, and other federal laws protecting children with disabilities to the extent those claims seek relief "that is also available under [the IDEA]." **20 U.S.C. § 1415(l)**; ***Fry v. Napoleon Cmty. School***, No. 15-497, 2017 WL 685533, at *8 (U.S. Feb. 22, 2017) ("Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA."); ***J.B.***, 721 F.3d at 592 ("[B]efore parties may bring a claim in district court under a different statute for which they seek relief which is also available under the IDEA, the parties must first exhaust the administrative remedies under the IDEA."). After argument in this case, the Supreme Court held that "'relief that is also available' under the IDEA" means "relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" ***Fry***, 2017 WL 685533, at *8. Thus, "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" *Id.*, at *3, *quoting* **§ 1412(a)(1)(A)**.

"[D]etermining whether a suit indeed 'seeks' relief for [denial of a FAPE], a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.*,

at *8. The inquiry "does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) 'FAPE' or 'IEP.'" *Id.*, at *11. Rather, "[i]n addressing whether a complaint fits that description, a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.*

> The IDEA, of course, protects only "children" (well, really, adolescents too) and concerns only their schooling. § 1412(a)(1)(A). And as earlier noted, the statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her "unique needs." § 1401(29); see *Rowley*, 458 U.S., at 192, 198, 102 S. Ct. 3034; *supra*, at ——. By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools. And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs.

*Id.* "A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute." *Id.*, at *13.

II.

McCauley did not file an IDEA due process complaint, request a due process hearing, or engage in the exhaustion procedures under the IDEA. *See* **20 U.S.C. § 1415(f), (g), (l)**. She argues exhaustion is not required because she does not seek relief available under the IDEA. The question here is whether the complaint is based on the District's denial of a FAPE. *Fry*, 2017 WL 685533, at *8 ("[T]he thing a

plaintiff must seek in order to trigger § 1415(l)'s exhaustion rule—is relief for the denial of a FAPE.").

Considering "substance, not surface," the district court did not err in finding the complaint seeks relief for denial of a FAPE under the IDEA. *Id.*, at *11. The second amended complaint states, "At all times mentioned above, [J.M.] was entitled to the educational services and protections available under the Individuals with Disabilities Education Act of 1975" and "at all times [J.M. was] entitled to reasonable accommodations" for his disabilities. It alleges that "[b]etween February 2014 and September 5, 2014, J.M. was placed in physical restraints for half of the time he actually spent at Defendant's schools." It further states that J.M. was "denied . . . because of his disability, participation in and the benefits of a public education." These allegations show that the complaint was based on the "denial of a FAPE" under the IDEA. *See id.*, at *13 (determining the Fry's complaint "alleges only disability-based discrimination" and "contains no allegation . . accus[ing] the school even in general terms of refusing to provide the educational instruction and services that E.F. needs").

"As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.*, at *4, *citing* **20 U.S.C. §§ 1401(9), (26), (29)**. The ADA and Section 504, on the other hand, forbid public entities and federally funded programs or activities from discriminating based on disability. *Id.*, at *5. The complaint here is not based on disability discrimination. Except for Count IV (the MHRA claim), the complaint does not use the word "discrimination." Rather, the complaint is based on how the use of isolation and physical restraints failed to provide proper "sufficient 'supportive services' to permit [J.M.] to benefit from . . . instruction," *id.*, at *4, and ultimately "denied [J.M.] . . . the benefits of public education." Finally, although McCauley did not "invoke[] the IDEA's formal procedures to handle the dispute," "the history of the

proceedings," including her initial complaint and first amended complaint contained claims under the IDEA, which is "[a] further sign that the gravamen of [the] suit is the denial of a FAPE." *See id.*, at \*13.

As noted, the *Fry* decision issued after argument in this case. But, the cases McCauley relies on—*Moore v. Kansas City Public Schools*, 828 F.3d 687 (8th Cir. 2016) and *Muskrat v. Deer Creek Public Schools*, 715 F.3d 775 (10th Cir. 2013)—do not change this analysis. In both, the complaints alleged common law torts seeking redress for non-educational injuries. ***Moore***, 828 F.3d at 692 ("The gravamen of the petition is a state law action for damages seeking redress for the brutal injuries D.S. suffered as the result of repeated sexual assault and rape while under Southwest's supervision."); ***Muskrat***, 715 F.3d at 785 ("No authority holds that Congress meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime. . . . Here, the Muskrats have alleged three scattered instances of potential battery. All three instances appear to have resulted from simple frustration with [the student] rather than any legitimate disciplinary goal."). McCauley does not allege any common law torts as the foundation for non-educational injuries. In fact, she voluntarily removed the common law tort claims from her second amended complaint. Moreover, the allegations show J.M.'s injuries were education-related: "Defendant's employees and agents had used isolation and restraint *as a disciplinary tool*, for their own convenience and in violation of their own policies." (emphasis added).

Unlike the *Moore* complaint—which referred to the plaintiff's IEP "solely to show notice to the [school district] of the conditions that put D.S. at risk from other students"—the complaint here shows the IEP is a "central dispute of this litigation." ***Moore***, 828 F.3d at 692. The complaint alleges: "Defendant repeatedly and consistently violated Plaintiff's rights by utilizing isolation and restraint on J.M. *which were not permitted within his IEPs*." (emphasis added). The claims here are based on the failure to implement J.M.'s IEP, specifically regarding discipline. *See*

*Muskrat*, 715 F.3d at 785 ("[A] timeout-related claim must be exhausted through the IDEA's statutory procedures.").

McCauley also believes the complaint is not subject to exhaustion because it seeks relief not available under the IDEA, namely compensatory and punitive damages. While the IDEA allows attorney's fees and costs (which McCauley seeks), **20 U.S.C. § 1415(i)(3)(B)**, compensatory and punitive damages are not available. ***Bradley v. Ark. Dep't of Educ.***, 301 F.3d 952, 957 (8th Cir. 2002). In *Fry*, the Supreme Court declined to address whether exhaustion is required "when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—here, money damages for emotional distress—is not one" the IDEA provides. ***Fry***, at \*8 n.4. However, this court has noted that "the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought." ***J.B.***, 721 F.3d at 595, *quoting* ***M.P. ex rel. K. v. Indep. School Dist. No. 721***, 326 F.3d 975, 980 (8th Cir. 2003). *See* ***Muskrat***, 715 F.3d at 785 (holding "a plaintiff cannot avoid exhaustion simply because he or she asks for damages"); ***Frazier v. Fairhaven School Comm.***, 276 F.3d 52, 64 (1st Cir. 2002) ("[W]e hold that plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court."); ***Covington v. Knox Cnty. School Sys.***, 205 F.3d 912, 917 (6th Cir. 2000) ("[W]e agree with those courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary."); ***N.B. by D.G. v. Alachua Cnty. School Bd.***, 84 F.3d 1376, 1379 (11th Cir. 1996) (holding that plaintiffs cannot avoid the exhaustion requirement by limiting relief to money damages because otherwise, "future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant"). McCauley's voluntary decision to remove J.M. from school, and thus seek only compensatory and punitive damages rather than compensatory education services, does not exempt her from the exhaustion requirement.

Because McCauley's complaint seeks relief available under the IDEA, denial of a FAPE, the claims are subject to exhaustion, barring an applicable exception.

## II.

There are three exceptions to the exhaustion requirement: (1) futility, (2) "inability of the administrative remedies to provide adequate relief," and (3) "the establishment of an agency policy or practice of general applicability that is contrary to law." ***J.B.***, 721 F.3d at 594, *quoting* ***Blackmon ex rel. Blackmon v. Springfield R–XII School Dist.***, 198 F.3d 648, 656 (8th Cir. 1999). "A court deciding whether to waive exhaustion should be 'guided by the policies underlying the exhaustion requirement.'" ***Id.***, *quoting* ***Bowen v. City of New York***, 476 U.S. 467, 484 (1986).

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

***Id.***, *quoting* ***Bowen***, 476 U.S. at 484.

McCauley contends the futility and inadequate remedy exceptions apply.

## A.

McCauley believes exhaustion would have been futile because she, like the *Muskrat* plaintiffs, attempted to address the problem by directly contacting the school. In *Muskrat*, however, the plaintiffs made greater attempts to work "through administrative channels to obtain the relief they sought." ***Muskrat***, 715 F.3d at 786. They made written and oral demands to school administrators, conferred during an

IEP meeting about the relief sought, and modified the IEP to accommodate their concerns.  *Id.*  McCauley, on  the other hand, alleges only that she "contacted school district officials to have the isolation immediately stopped, and consented only to restraint on a basis of necessity."  Although the complaint alleges "[s]he did not consent to isolation in the IEP team meetings," it does not allege she sought to address her concerns with isolation and physical restraint through the IEP process or modified J.M.'s IEP to reflect those concerns.

McCauley also claims the administrative process would not have addressed all her claims.  This, however, does not excuse exhaustion.  *See J.B.*, 721 F.3d at 594-95.  Although the administrative process may not address all claims, this court has held exhaustion is not futile because it would allow "the agency to develop the record for judicial review and apply its expertise" to the plaintiff's "claims to the extent those claims are related to implementation" of the IEP.  *Id.*

B.

McCauley contends the administrative process cannot provide adequate relief, compensatory and punitive damages.  As discussed, this argument is without merit.  *See J.B.*, 721 F.3d at 595 ("[T]he IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought.").

The district court properly dismissed the complaint for failure to exhaust administrative remedies.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-10-